UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 10-11165-RWZ

AMERICAN BOOKSELLERS FOUNDATION
FOR FREE EXPRESSION, et al.

v.

MARTHA COAKLEY, in her official capacity as
ATTORNEY GENERAL OF THE COMMONWEALTH OF
MASSACHUSETTS, et al.

MEMORANDUM OF DECISION

October 26, 2010

ZOBEL, D.J.

Plaintiffs are several individuals and organizations, including booksellers, publishers, an online photographic not-for-profit organization, and a licensed marriage and family therapist, that use the internet to communicate, disseminate, display and access a broad range of speech and ideas. Plaintiffs bring suit against the Attorney General of the Commonwealth to enjoin enforcement of a statute which criminalizes the dissemination to minors of any image or written material in electronic format that is "harmful to minors" on the ground that it violates the First Amendment and the dormant Commerce Clause. See Mass. Gen. Laws ch. 272, §§ 28 & 31, as amended by Sections 2 and 3 of Chapter 74 of the Acts of 2010. They seek an injunction prohibiting enforcement of the statute.

## I. Factual Background

### A. History of the Statute

Massachusetts law has long prohibited the dissemination of sexually explicit matter to minors.[1] In effect since December 29, 1982, Mass. Gen. Laws ch. 272, § 28 provides in pertinent part:

> **Section 28. Matter harmful to minors, dissemination; possession; defenses**
>
> Whoever disseminates to a minor any matter harmful to minors, as defined in section thirty-one, knowing it to be harmful to minors, or has in his possession any such matter with the intent to disseminate the same to minors, shall be punished . . . . It shall be a defense in any prosecution under this section that the defendant was in a parental or guardianship relationship with the minor. It shall also be a defense in any prosecution under this section if the evidence proves that the defendant was a bona fide school, museum or library, or was acting in the course of his employment as an employee of such organization or of a retail outlet affiliated with and serving the educational purpose of such organization.

The term "harmful to minors" is defined in § 31, as follows:

> [M]atter is harmful to minors if it is obscene or, if taken as a whole, it (1) describes or represents nudity, sexual conduct or sexual excitement, so as to appeal predominantly to the prurient interest of minors; (2) is patently contrary to prevailing standards of adults in the county where the offense was committed as to suitable material for such minors; and (3) lacks serious literary, artistic, political or scientific value for minors.

Section 31 also defines "matter," which definition is the subject of the challenge in this

---

[1] An earlier version of a similar statute, R.S. 1836, c. 130, § 10, prohibited the introduction into any "family, school, or place of education" of any "pamphlet, ballad, printed paper, or other thing, containing obscene language, or obscene prints, pictures, figures, or descriptions, manifestly tending to the corruption of the morals of youth."

case. The definition is discussed more fully below.

On February 5, 2010, the Massachusetts Supreme Judicial Court ruled that then-existing statutory definitions of “matter” and “visual material” in Mass. Gen. Laws ch. 272, § 31, did not include “electronically transmitted text, or ‘online conversations’ for the purposes of a prosecution for attempted dissemination of matter harmful to a minor [under Mass. Gen. Laws ch. 272, § 28].” Com. v. Zubiel, 456 Mass. 27, 27-28, 921 N.E.2d 78, 79 (2010).[2]

**B. 2010 Amendment of the Statute**

In response to that ruling, the Massachusetts State Legislature sought to amend the statute. On March 4, the amendment passed; it was signed into law on April 12, 2010, and was effective as of July 12, 2010. See Mass. Gen. Laws ch. 272, §§ 28 & 31, as amended by Sections 2 and 3 of Chapter 74 of the Acts of 2010.

Section 2 of the amendments updated the definition of “matter” in § 31 to add electronic communications, including electronic mail, text messages, and instant messages, and now reads as follows:

> any handwritten or printed material, visual representation, live performance or sound recording including, but not limited to, books, magazines, motion picture films, pamphlets, phonographic records, pictures, photographs, figures, statues, plays, dances, or any electronic

[2] In that case, the SJC overturned the conviction of a man who had communicated electronically with someone he believed to be a 13-year-old girl, by using chat and IM services, culminating in an attempt at an actual meeting during which he was arrested. Zubiel, 456 Mass. at 28-29, 921 N.E.2d at 79-80. The SJC held that the definition of “matter,” as then defined in Mass. Gen. Laws ch. 272, § 31, did not encompass electronically transmitted text, or “online conversations,” for the purposes of a prosecution for attempted dissemination of matter harmful to a minor under Mass. Gen. Laws ch. 272, § 28.

> communication including, but not limited to, electronic mail, instant messages, text messages, and any other communication created by means of use of the Internet or wireless network, whether by computer, telephone, or any other device or by any transfer of signs, signals, writing, images, sounds, data, or intelligence of any nature transmitted in whole or in part by a wire, radio, electromagnetic, photo-electronic or photo-optical system.

(Emphasis added.) The gravamen of plaintiffs' complaint is that individuals and institutions disseminating "sexually frank" information by means of a generally accessible website cannot, as a practical matter, discern the ages of those who choose to access the information. As a result, the statute impermissibly inhibits free speech as to adults.

## II. Legal Analysis

### A. Standard for a Preliminary Injunction

The standard for issuance of a preliminary injunction is that the plaintiff must demonstrate: (1) a likelihood of success on the merits; (2) a potential for irreparable injury; (3) that the balance of equities favors the moving party; and (4) that the public interest would not be adversely affected by an injunction. See Narragansett Indian Tribe v. Guilbert, 934 F.2d 4, 5 (1st Cir. 1991). The first factor, likelihood of success on the merits, has been described as the "sine qua non" of this inquiry, without which "the remaining factors become matters of idle curiosity." New Comm Wireless Services, Inc. v. SprintCom, Inc., 287 F.3d 1, 9 (1st Cir. 2002). The inquiry, here then, is whether plaintiffs are likely to succeed on the merits of their claim that the statute violates the

First Amendment.[3]

**B. First Amendment Challenge**

I start with first principles. The Supreme Court has long held that a statute which prohibits distribution to minors of materials that are obscene as to *minors*, but not as to *adults,* is constitutional. See Ginsberg v. New York, 390 U.S. 629, 634 (1968); see also Reno v. American Civil Liberties Union, 521 U.S. 844, 864 (same). Plaintiffs do not, therefore, suggest that the statute is unconstitutional because it regulates sexually explicit material.

Plaintiffs contend, rather, that the statute, as amended, is overbroad as it contains no requirement that a sender knew that the matter was purposefully disseminated to a person he *knew* to be a minor.[4] All parties agree that without such a requirement, the statute does not pass constitutional muster. The Commonwealth contends that an earlier SJC's decision established this knowledge requirement, which this court should, therefore, read into the statute.

It relies on Com, v. Belcher, 446 Mass. 693, 846 N.E.2d 1141 (Mass. 2006), in

---

[3] Defendants challenge plaintiffs' standing because the statute does not reach materials currently on plaintiffs' websites, as there is no evidence that plaintiffs purposefully directed communications to minors. Plaintiffs point out, however, that there is no feasible means of preventing minors from accessing their websites without also significantly limiting communication to, by, between, and among adults. The case law clearly confers standing in such instances. See, e.g., American Booksellers Foundation v. Dean, 342 F.3d 96, 101-102 (2d Cir. 2003).

[4] Neither amendment to the statute changed the law with respect to the mental state required for conviction under Mass. Gen. Laws ch. 272, § 28. Nevertheless, because the statute was amended to reach a medium in which the proprietor cannot feasibly control who may access its content, plaintiffs bring this facial challenge.

which the SJC held that to sustain a conviction under the statute, the Commonwealth must prove that "(1) the matter was harmful to minors; (2) the defendant knew the matter was harmful to minors; and (3) the defendant disseminated that matter to a minor." Id. at 695. The SJC further clarified that "dissemination must be purposeful or intentional on the part of the defendant." Id. at 697.

In Belcher, defendant appealed his conviction after jury trial on one count of violating Mass. Gen. Laws, § 28, disseminating matter harmful to a minor. He argued that he himself watched adult films, while (unbeknownst to him and without his permission) his niece, a minor, surreptitiously accessed the materials. He argued that the trial judge erred in failing to instruct the jury that any dissemination must be purposeful and intentional.

The SJC found no error in the jury instruction, and affirmed the defendant's conviction. It said that, as a general matter, § 28 "requires purposeful activity for proof of guilt." Id. at 696. The court further noted that the Commonwealth's closing arguments suggested purposeful, rather than negligent, dissemination of the materials, but in light of defendant's trial testimony, the jury could not have found that his actions were the result of negligence. Id. at 697 & n.4. Because the decision turned on the threshold question of whether the defendant had purposefully or intentionally disseminated the material, the SJC had no reason to consider any secondary issue. Nowhere does the court address whether the Commonwealth is required to prove that the defendant disseminated the material to a person known to him to be a minor. Thus, Belcher simply cannot bear the weight the Commonwealth seeks to place upon it.

The Commonwealth correctly points out that, under the doctrine of constitutional avoidance, courts have construed various statutes in such a manner as to render them constitutional. See, e.g., United States v. X-Citement Video, Inc., 513 U.S. 64, 69 (1994) ("[A] statute is to be construed where fairly possible so as to avoid substantial constitutional issues"; interpreting "knowingly" in federal obscenity statute to require proof both that the defendant knowingly shipped obscene materials, and that defendant knew the videos shipped contained images of a minor). Here, however, a federal court is called upon to construe a state statute in the absence of an explicit state court adjudication. In such circumstance, revision of a state statute by a federal court would be inappropriate. See, e.g., Virginia v. American Booksellers Ass'n, Inc., 484 U.S. 383, 397 (1988) (declining to "rewrite a state law to conform it to constitutional requirements.").[5]

A law that is overly broad "proscribe[s] a substantial amount of constitutionally protected speech judged in relation to the statute's plainly legitimate sweep." Virginia v. Hicks, 539 U.S. 113, 118-19 (2003)). Such a law warrants the drastic remedy of invalidation to "allay the concern that the threat of enforcement of [such a] law may deter or chill constitutionally protected speech." Id. To prevail in a facial-overbreadth

---

[5] Federal courts have been reluctant to revise state statutes in the absence of a prior state court ruling, particularly where certification is an option. Brockett v. Spokane Arcades, Inc., 472 U.S. 491, 510, 105 S.Ct. 2794 (O'Connor, J., concurring) ("Speculation by a federal court about the meaning of a state statute in the absence of a prior state court adjudication is particularly gratuitous when, as is the case here, the state courts stand willing to address questions of state law on certification from a federal court"). Here, however, the Commonwealth has admitted that the statute is unconstitutional without the requirement that the defendant knew the recipient was a minor.

challenge, plaintiffs must "demonstrate from the text of [the statute] and from actual fact that a substantial number of instances exist in which the law cannot be applied constitutionally." N.Y. State Club Ass'n v. City of New York, 487 U.S. 1, 14 (1988).

### C. Conclusions of Law[6]

Plaintiffs have demonstrated, without question, that the 2010 amendments to §§ 28 and 31 violate the First Amendment. They have thus proven both that they are likely to succeed on the merits and that absent injunction, they will suffer irreparable harm. See Elrod v. Burns, 427 U.S. 347, 373 (1976) ("loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.") I am also persuaded that plaintiffs have established that the balance of equities favors them, and that the public interest would be properly served by an injunction.[7]

## III. Conclusion

Plaintiffs' Motion for Preliminary Injunction (Docket # 19) is ALLOWED. Plaintiffs shall forthwith submit a proposed injunction after seeking the agreement of the Attorney General to the form thereof.

October 26, 2010
DATE

/s/Rya W. Zobel
RYA W. ZOBEL
UNITED STATES DISTRICT JUDGE

[6] Since the facts are not contested, I omit a findings of fact section.

[7] Given the conclusion that the statute is unconstitutional because overbroad, I do not reach plaintiffs' remaining arguments.